## SUPERIOR COURT OF BAL-TIMORE CITY

Filed July 16, 1890.

SCHMIDT
VS.
LEVI S. WHITE ET AL.

*Gans & Haman* and *R. B. Tippett* for petitioner.

*Bernard Carter* for respondents.

PHELPS, J.—

An act was approved on the 3rd of April, 1890, described in its title as "regulating the sale of intoxicating liquors in the City of Baltimore," commonly known as the "High License Law." By this Act the term "intoxicating liquors" is comprehensively defined and an agency created styled the "Board of Liquor License Commissioners for Baltimore City," the duties of which are prescribed. Among these duties, they are required to "keep a full record of all applications for license, of all recommendations for and remonstrances against the granting of license, and of their action thereon, and the vote of the members of said board by yeas and nays shall be taken on the question of granting or refusing every application for license, and said records of said board shall at all suitable times be open to the inspection of the public. (Sec. 653 C).

"No license to sell intoxicating liquors other than by wholesale traders, distillers, brewers and rectifiers, shall be granted in the City of Baltimore except by said board, and only to citizens of the United States, of temperate habits and good moral character who have complied with the requisites of this Act." (653 E). These

requisites are the filing by the applicant of a petition, notice whereof is to be advertised by the board, the petition to contain certain particulars, verified by affidavit and certified to by "at least ten respectable qualified voters." (653 G., 653 H)

"The said board shall publicly hear petitions from residents of the ward or persons living or doing business in the vicinity of the place for which license is prayed, in addititon to that of the petitioner in favor of and the remonstrances against the granting of said license, and in all cases shall refuse the same whenever in the opinion of the said board, such license is not necessary for the accommodation of the public, or the petitioner or petitioners is or are not fit persons to whom such license should be granted" (653 T). "If after the notice and hearing, provided for in this Act, the said board should decide to grant the license prayed for they shall notify the applicant," who shall thereupon pay $250 to the Clerk of the Court of Common Pleas, by whom the license is issued (653 L). These are the material provisions of the law bearing upon the present controversy, from which it appears that remonstrances against the granting of licenses are matters of public record, subject to inspection, and are to be heard publicly. However desirable it may be thought to be that the board should be at liberty to be influenced by private advices, or by confidential remonstrances withheld from the public and from the party concerned, it is sufficient to say that no such authority is to be found in the Act, but is impliedly, if not expressly, negatived by its terms. The plaintiff having been refused a license after having filed with the board his petition in the prescribed form, now applies to this Court for a mandamus to compel the board to authorize the proper clerk to issue a license upon payment of the legal fee, and likewise directed to the clerk, commanding him, &c. To this petition, the defendants, the Board of License Commissioners, put in their answer; to this answer the plaintiff replied by traverse and pleas, and to certain of these pleas the defendants demur. This demurrer of course reaches back to the petition for mandamus, and its effect is to admit all the plaintiff's allegations of fact, which are well pleaded. These allegations it is not deemed necessary to set forth at large. The case is susceptible

of being gathered up into a short point. It appears that although a remonstrance against the licensing of the applicant was signed by over seventy persons and filed with the board, the board refused to allow inspection thereof, and gave it no public hearing. This was clearly in violation of the express requirement of law, as already quoted. In the case of a statutory tribunal of special and limited powers, the matter being of substance essential to justice, and not simply a model regulation, and the language being express and mandatory, such requirement must be regarded as jurisdictional. Failure to comply with the law in this indispensable particular vitiated the proceeding, and the hearing and decision thereon are a nullity. It appears further that the board were materially influenced in refusing the license by ex parte information damaging to the petitioner's character, not communicated to the petitioner, nor publicly heard as required by law.

It has already been seen that in this the board acted outside the defined limit of their statutory jurisdiction or in other words failed to exercise the discretion confided to them by the Act.

It also sufficiently appears upon the face of the pleadings that the ostensible reason assigned by the board for refusing the license was not in point of fact and in good faith the real ground of its action. The real reason evidently was that the board did not consider the plaintiff a "fit person." This opinion was in no respect based upon legal data. It appears to have been founded partly upon the "remonstrance," inspection whereof had been unlawfully refused, and partly and chiefly upon the secret, ex parte, but contraband information referred to. This is not such an "opinion" as is contemplated by the law, which calls for publicity at every step and stage. The ostensible reason for refusing the license was that the license was not necessary to the public accommodation. This was not a bona fide exercise of the discretion confided to the board, nor a substantial compliance with law. The defendants are not chargeable nor charged with any evil intent to pervert the law for unworthy purposes and doubtless acted under the impression that they were endeavoring faithfully and conscientiously to carry out what they conceived to be the object of the law, in the sole intent of the public good. Their counsel claim that

even if they have mistaken the law and their duty in the premises, they are still vested with discretion which cannot be controlled. It has been shown that the discretion they have attempted to exercise has been outside the pale of the statute from which alone all their authority is derived, and the authority cited by the other side show that in such cases mandamus is the only remedy available to prevent a failure of justice. Whether the writ will ultimately be granted in this case will depend, of course, upon the proof to be taken. Demurrer overruled.

The case of Vireckt vs. Levi S. White et al., demurrer overruled for reason assigned in the opinion of Schmidt vs. same defendants.